United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SMITH III, | No. C-03-4646 CRB (EMC) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO FURTHER COMPEL PRODUCTION OF DOCUMENTS AND REQUEST FOR SANCTIONS** |
| v. | |
| UNITED PARCEL SERVICE, | |
| Defendants. | **(Docket No. 97)** |
| _____/ | |

Plaintiff John Smith, III has moved to compel discovery. Having reviewed the parties' briefs and accompanying submissions, and having considered the argument of counsel, and good cause appearing therefor, the Court hereby GRANTS in part and DENIES in part Plaintiff's Motion to Further Compel Production of Documents and Request for Sanctions.

## I.   FACTUAL BACKGROUND

The following portions of this Court's Order of September 21, 2005, are at issue: (1) production of documents from the Incident Report System ("IRS") database for the prior 30 months; (2) production of documents related to claims paid on lost or stolen packages at the facility where Plaintiff worked, commencing with the date at which the first of four supervisors began working at the facility in question, but no earlier than April 2000; (3) production of documents related to any disciplinary action taken by any of the four supervisors against an employee as a result of loss or theft of packages from the facility where Plaintiff worked from January 2000 to the date of the Order. The Court ordered Defendant to produce these documents by September 29, 2005.

## II. DISCUSSION

As a preliminary matter, the Court notes that Plaintiff does not seriously dispute the geographic scope of the Order of September 21, 2005 as interpreted by Defendant.  Defendant interprets the Order as relating only to the Eastshore Package Center where Plaintiff worked, not to all of UPS's facilities in Richmond, California.  Plaintiff's supervisor and the principal decisionmaker in his termination, Rebecca Cooper, supervised employees only at the Eastshore Package Center, not the entirety of UPS's operations in Richmond.  Karl Gramm, who approved Ms. Cooper's decision to terminate Plaintiff, did have a broader venue but played only a limited role in this case.  Plaintiff concedes that any action of Julie Rose, a security supervisor at UPS's corporate headquarters in Atlanta, that occurred outside the Eastshore Package Center are not relevant.  Plaintiff's counsel made clear that his focus is on documents related to packages missing, lost, or stolen only from the Eastshore Package Center.  Thus, the Order pertains to the Eastshore Package Center only.

In the IRS database, Defendant produced very few files responsive to the Order of September 21, 2005.  Plaintiff was dissatisfied with the declarations provided by Defendant.  At the hearing, Defendant made Randy Starkweather, a security manager for UPS, available as a witness subject to direct examination and cross-examination, as well as examination by the Court, regarding UPS's document-retention policies and Mr. Starkweather's searches for relevant files.  After hearing his testimony, the Court concludes that Mr. Starkweather conducted three searches for documents.  Ultimately, he used every search field possible to search for missing and lost packages, not just stolen packages.  After the third search, some additional documents were found.  Defendant has or will have produced within seven days all documents resulting from said searches.  Specifically, by February 3, 2006, Defendant will turn over additional documents that were recovered but initially withheld because they did not name any employee.  Defendant will also produce driver follow-up reports by the same date.  With this production, the Court finds there are no other IRS records that can be produced.

As to IRS records older than 30 months which were purged consistent with Defendant's document retention policy, the Court concludes that no other search mechanisms are available to

recover the purged data. Counsel for Defendant represented that it would submit a supplemental declaration explaining why purged documents cannot be retrieved or reconstructed. It has done so. Ritter Decl., ¶¶ 6-8. The older data has been overwritten and is no longer recoverable.

As to scan-exception reports, Plaintiff questions whether those were actually purged within 14 days pursuant to Defendant's document retention policy. He points to the fact that somehow Defendant retained an April 2, 2002, audit scan-exception report related to Plaintiff. Defendant explained that while these reports are purged within 14 days, the hard copy of this report was retained and placed in Plaintiff's personnel file at the time because of a perceived pattern. Defendant revealed that similar hard copy reports might exist in other UPS drivers' personnel files. Therefore, the Court orders Plaintiff to provide Defendant with a list of names of no more than 40 drivers who worked at the Eastshore Package Center at or about the time of Plaintiff's termination. Defendant shall search each such driver's personnel file for hard copies of audit scan-exception reports generated from July 2000 to July 2003 and shall produce any such documents to Plaintiff by February 6, 2006.

The Court concludes that no other documents remain to be obtained. The Court also concludes Defendant did not engage in deliberate spoliation of evidence warranting sanctions. The imposition of sanctions for destruction of documents pursuant to a document-retention policy requires there be some indication of intent to destroy for the purpose of obstructing or suppressing truth. *Stevenson v. Union Pac. R.R.*, 354 F.3d 739, 747 (8th Cir. 2004). The appropriateness of sanctions for evidence spoliation such as an adverse inference instruction turns on a four-factor test: (1) whether the party knew, based on similar incidents in the past, that the evidence would be relevant in any potential litigation; (2) whether the party was actively investigating the incident, suggesting it knew of the likelihood of litigation; (3) whether the party kept similar evidence favorable to itself; and (4) whether the party moving for sanctions was prejudiced by the destruction of the documents. *Id.*

Here, it would not be reasonable to expect Defendant to know that it should retain all audit scan-exception reports and IRS data, at least until the Court issued the Order on September 21, 2005. While it may be argued that upon the filing of Plaintiff's EEOC discrimination complaint nearly one

year after his termination, UPS had some knowledge of the likelihood of litigation, the relevance of audit scan-exception reports and IRS data was not facially obvious. This is particularly so since UPS did retain hard copies of printouts derived from the IRS data; those have been produced to Plaintiff. Moreover, the record is devoid of any evidence that UPS kept IRS data or scan-exception reports favorable to itself; instead, the data were purged in the regular course of business. Finally, Plaintiff did not show that any probative evidence was lost. UPS has maintained and produced the paper files. Plaintiff has not demonstrated prejudice by being denied the incremental benefit he would have received from production of the electronic data. There is no substantial showing that the electronic data would provide more favorable evidence than the paper documents produced.

Plaintiff argues that the magnitude of claims for lost or undeclared packages raises suspicion about the completeness of the records searched and produced. However, there is no indication that a significant portion of those claims involve packages lost while in the custody of drivers at the Eastshore Package Center. The claims could stem from losses occurring elsewhere in the UPS chain. The Court concludes Plaintiff has not documented willful spoilation or concealment of documents by Defendant.

### III. CONCLUSION

For the foregoing reasons, the Court orders Defendant to produce (1) investigation documents even when no employee is named, driver follow-up reports and all documents found in the three searches of the IRS data, and (2) audit scan-exception reports from July 2000 to July 2003 in the personnel files of up to 40 UPS drivers, whose names Plaintiff will supply.

IT IS SO ORDERED.

Dated: January 31, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge